IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action Number 12-cv-00366 RPM

MICHAEL GONZALEZ

 Plaintiff,
v.

SHERIFF JOHN COOKE, in his official and individual capacities;
COMMANDER GREG BROSWELL; in his individual capacity;
COMMANDER KENNETH LEACH; in his individual capacity;
COMMANDER PAUL GLANZ; in his individual capacity;
COMMANDER SALLY GOMEZ; in her individual capacity; and
COMMANDER JERAMY HETTINGER, in his individual capacity;

 Defendants.
_____

## MEMORANDUM OPINION AND ORDER
_____

On February 12, 2010, Ernest Williams attacked Michael Gonzales in the day room of Housing Unit 202 of the Weld County Jail in Greeley, Colorado. Both men were inmates of the Jail, managed by Weld County Sheriff John Cooke. Gonzales filed this civil action to recover damages for the injuries he sustained in the attack, claiming under 42 U.S.C. § 1983 that the defendants violated the Eighth Amendment to the United States Constitution because the individual defendants were deliberately indifferent to a substantial risk of physical harm, known to them, and failed to act to protect him. He claims that the Sheriff failed to establish an adequate policy and failed to train the jail staff to provide adequate protection for inmates who are known to be targets for assaults because they have provided information to law enforcement authorities to assist in the prosecution of fellow gang members.

The defendants moved for summary judgment of dismissal, denying any Constitutional violation and asserting qualified immunity for liability of the individual defendants. That motion has been fully briefed and oral argument was heard. The following narrative is based on the exhibits submitted with the briefing, viewing the facts in the light most favorable to Plaintiff as the non-moving party.

There are criminal gangs well known to law enforcement in Weld County. One such gang is the Surenos gang in which Michael Cole (nickname "Shark") is a leader and Michael Gonzales (nickname "Speedy") is a member. Other members include Ernest Williams (nickname "Howdy") and Daniel Cardenas. At the time of the attack Cardenas was housed in Unit 203 and Cole was in a different unit.

Investigator James Hayward, a deputy of the Sheriff, was assigned to investigate gang activity in the Jail. Gangs were described as "Security Threat Groups" ("STGs"). On March 12, 2009, a note (in gang parlance a "wila") was confiscated from Williams. Cole was the author. He identified "Speedy" as a snitch based on reading discovery information provided in the course of criminal proceedings against Cole on serious criminal charges. Cole, Williams and Gonzales were all in the Jail at that time.

As a result of that note, a "Keep Separate" or "KSEP" order was entered in the Jail's computer system directing that Cole and Gonzales be kept apart. The order was indexed under both names.

The criminal investigation for the charges against Cole was being done by Greeley Police Detective Scott Barber, beginning with a shooting in November, 2008. Gonzales became a key witness for four criminal charges against Cole when Gonzales

entered into a proffer agreement with the Weld County District Attorney's Office in May, 2009.

Gonzales was on parole in early February, 2010. His parole officer, Kristen Maris, told Detective Barber that she thought Gonzales was in danger because of threats from Sureños gang members. At a meeting among Gonzales, Maris and Barber, the detective offered the protection of a Witness Protection program, but Gonzales declined because he did not want to leave Colorado and lose contact with his family.

On February 4, 2010, parole was revoked and Gonzales was booked into the Jail. That information was not given to Detective Barber. Cole, Williams and Cardenas were in the Jail. On February 10, 2010, Investigator Hayward received an anonymous tip through the Jail inmate telephone system that Cole had put a "hit" on an inmate in either Units 202 or 203 and ordered inmates Cardenas or Williams to execute the order. Cole was in a unit other than 202 and 203. Hayward considered this tip to be credible information and all of the individual defendants were made aware of it.

At 1506 hours on February 12, 2010, Williams was heard on a monitored telephone call with his mother, expressing anger about snitches and warning her not to visit him on the following day. He assaulted Gonzales at 1650 hours.

The defendants had the rosters for the inmates in Units 202 and 203. There was speculation among them about who might be the potential victim of the expected assault. No one looked in the computer to see the KSEP between Cole and Gonzales.

Commanders had the authority to place Williams and Cardenas in administrative segregation without any due process procedure, thereby protecting all of the other

3

inmates in Units 202 and 203 while investigating the tip to attempt to identify the potential victim.  That identification would have been simple if they had reviewed the KSEP based on the wila found on Williams in 2009.

The plaintiff has shown sufficient evidence to support a finding that the defendants had actual knowledge of a threat of physical violence to the inmates of Units 202 and 203 from inmates Williams and Cardenas and the failure to remove them from their units showed deliberate indifference to their safety, satisfying the subjective intent element of an Eighth Amendment violation under *Farmer v. Brennan,* 511 U.S. 825 (1994).  The defendants have challenged some of these facts raising questions that may affect a determination of the reasonableness of inferences to be drawn from circumstantial evidence of the state of mind of each of the individual defendants.

These defendants seek to avoid a jury trial, claiming qualified immunity because they say that they did not know that Gonzales was the intended victim and, therefore, each of them did not have sufficient knowledge of the plaintiff's exposure to the specific risk of an assault by Williams or Cardenas.  The defendants knew that Williams and Gonzales had been friends in the Surenos gang and they had been housed in the same unit and even in the same cell many times before without incident.  They thought that would make it unlikely that Williams was going to attack Gonzales.

Qualified immunity is a legal issue to be decided by the court under an objective standard, that is, whether a reasonable jail official would have understood that his failure to act to protect Gonzales and the other inmates by segregating Williams and Cardenas would be a violation of the Eighth Amendment.  Ordinarily that question is answered at summary judgment.  Under exceptional circumstances the case must first

go to the jury when there are questions of historical facts that are essential to the constitutional question involved. The plaintiff has a Seventh Amendment right to a jury determination of those facts.

The question in this case is whether the defendants had enough information to know that they must remove Williams from Unit 202 to protect Gonzales and the others in that unit from Williams. That question must be answered separately as to each of the Commanders. Defendants Greg Broswell and Kenneth Leach were on duty when the attack occurred. It is not clear when each of the others were on duty and for which units they were responsible. All of them had access to the computer files and rosters. It is not clear who had talked with Detective Hayward and what the conversations included. He is dead.

There is a dispute as to whether Detective Barber knew that Gonzales was back in Jail and what communications he had with Detective Hayward on February 11, 2010. Melanie Sedlak, the defense attorney for Gonzales, said that knowing of his proffer against Cole, she warned an unidentified commander of the danger. The identity of that commander is not known on this record.

It is not clear what information was on the rosters when defendants reviewed them and what communications were passed on when shift changes were made.

These and other fact questions relate to the subjective intent of each of the defendants making them liable for deliberate indifference to a known risk of physical harm to the plaintiff. The state of mind of a defendant is quintessentially a matter for a jury making reasonable inferences from circumstantial evidence.

Under the authority of *Maestas v. Lujan,* 351 F.3d 1001, 1005 (10th Cir. 2003) and *Gonzales v. Duran*, 590 F.3d 855, 856 (10th Cir. 2009) the question of which, if any, of the individual defendants is entitled to qualified immunity is deferred until a jury answers these questions in an interrogatories verdict form.

Sheriff Cooke is not individually liable for damages in this case because the plaintiff has failed to show his personal participation in these events.  The Sheriff's Office as a governmental entity is liable if the individual defendants acted pursuant to a policy set by the Sheriff or if there is an affirmative link between a failure to train or supervise the jail officers.  In this case, Sheriff Cooke testified that, based on the internal investigation of this assault, he found the commanders' actions were approved because they did not have enough information to believe that Gonzales was the intended victim.  That is a ratification of their failure to put Williams in segregation and demonstrates a failure of a policy that should have at least required a search of the computers for KSEPs, knowing that Gonzales was an informant against Cole, the source of the order to Williams and Cardenas.  There is sufficient support for trial of the Sheriff.

Upon the foregoing, it is

ORDERED that the defendants' motion for summary judgment is denied as to the Commander Defendants and the Sheriff in his official capacity and granted with respect to Sheriff Cooke in his individual capacity.

DATED:  March 24th, 2015

                                    BY THE COURT:

                                    s/Richard P. Matsch
                                    _____
                                    Richard P. Matsch, Senior District Judge